IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| GIANNI HILANI, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    No. 11-2993-STA-tmp |
| | ) |
| THE GREEK ORTHODOX | ) |
| ARCHDIOCESE OF AMERICA, | ) |
| | ) |
|       Defendant. | ) |

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

Before the Court is Defendant the Greek Orthodox Archdiocese of America's Motion to Dismiss for Lack of Personal Jurisdiction (D.E. # 15) filed on January 20, 2012. By agreement of the parties, the Court granted Plaintiff Gianni Hilani limited discovery on the jurisdictional issue raised in Defendant's Motion to Dismiss, and Plaintiff has filed a response in opposition to the Motion (D.E. # 25). For its part Defendant has filed a reply brief. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

**BACKGROUND**

Plaintiff's Complaint alleges that Defendant owns a youth summer camp known as Ionian Village in Elias, Greece. (Compl. ¶¶ 5, 6.) In May 2009, the parties entered into an agreement where Plaintiff was hired to provide architectural and construction services at the summer camp for the purpose of the renovating the facility. (*Id.* ¶ 6.) Defendant agreed to pay Plaintiff a sum in the

amount of € 235,715.20. (*Id.*) Construction began on May 15, 2009, and was completed July 30, 2009. (*Id.* ¶ 10.)[1] Plaintiff alleges that despite the completion of the project, Defendant has failed to pay him the full contract price for his services in breach of the parties' contract. (*Id.* ¶¶ 14–17.) With respect to this Court's jurisdiction, the Complaint alleges that Plaintiff is a citizen of Athens, Greece, and that Defendant is religious organization with its headquarters at 8-10 East 79th Street, New York, New York. (*Id.* ¶¶ 3, 4.) The Complaint further alleges that Defendant "is doing business" at Annunciation Church, 573 N. Highland Street, Memphis, Tennessee. (*Id.* ¶ 4.)

In its Motion to Dismiss, Defendant argues that this Court lacks jurisdiction because Defendant is not located in Tennessee, no acts or omissions at issue occurred in Tennessee, and Defendant has no continuous and systematic contacts with Tennessee. Defendant argues that as a religious organization it was incorporated under the laws of the state of New York in 1921. Defendant has no operations in the state of Tennessee. As the Orthodox Church is a collection of "self-governing" churches, each local church is administratively independent. The Greek Orthodox Archdiocese of America consists of an Archdiocesan district of New York and eight regions referred to as "Metropolises" based in New Jersey, Chicago, Atlanta, Detroit, San Francisco, Boston, Pittsburgh, and Denver. Annunciation Church in Memphis is located within the Detroit Metropolis. The Archdiocese is governed by a panel of eight Bishops, one from each metropolis. The Archdiocese of New York and the eight Metropolises are further subdivided into 540 church parishes. Each parish is separately incorporated, and there are five separately incorporated Greek Orthodox, including Annunciation Church, registered as active corporations in the state of

---

[1] The Complaint also alleges that the parties entered into a revised contract on July 23, 2009, for additional work at the summer camp. (Compl. ¶¶ 7, 8.)

Tennessee. Based on this organizational pattern of the Greek Orthodox Church, Defendant denies that it owns or operates Annunciation Church in Memphis. What is more, Defendant owns no property in Tennessee, does not participate in any commercial activities in Tennessee, maintains no offices or employees in Tennessee, and holds no bank accounts in Tennessee. Defendant does admit that it owns and operates the Ionian Village in Elias, Greece.

Based on these additional facts asserted in its memorandum, Defendant argues that this Court has no personal jurisdiction over it. According to Defendant, there is neither general nor specific jurisdiction. There is no specific personal jurisdiction in this case because the claim does not arise out of and is not related to Defendant's contacts with the state of Tennessee. Defendant has not availed itself of the privilege of acting in the forum state. Defendant argues that the breach of contract alleged in the Complaint has no connection to Tennessee or any activities of Defendant in Tennessee. As a result, the Court's exercise of jurisdiction in this case would not be reasonable. Defendant argues then that specific personal jurisdiction over Defendant does not exist in this case. Defendant goes on to contend that Plaintiff has not met the even higher standard to allege that the Court has general personal jurisdiction over Defendant. Plaintiff has not alleged and cannot show that Defendant has continuous and systematic contacts with the state of Tennessee, contacts which would approximate a physical presence in Tennessee. Defendant has no property, offices, employees, assets or other kinds of contacts with the forum state. Therefore, in the absence of either specific or general personal jurisdiction over Defendant in this forum, Defendant moves the Court to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Plaintiff has filed a response in opposition based on Defendant's answers to written discovery and depositions taken on the limited subject of Defendant's contact with the state of Tennessee.

Plaintiff begins by reviewing the allegations of the Complaint and the jurisdictional facts Defendant cites in its memorandum. Plaintiff then asserts the following additional facts. Local parishes of the Greek Orthodox Church are chartered under the authority of the Archdiocese and bound to follow the charter, the regulations and the encyclicals of the Archdiocese. Failure to do so may result in the revocation of the local parish's charter or in Defendant assuming administration of the local parish until "canonical order" is restored. Should the Archbishop determine that canonical order cannot be restored, all title in the property of the local parish shall vest in Defendant. Annunciation Church has adopted by-laws to govern its parish and made the by-laws by the authority of Defendant. With respect to staffing, each parish priest for a local Greek Orthodox congregation is appointed by the Metropolis for that parish. The Archdiocese also establishes the minimum standards for parish priests in personnel matters such as benefits and certain forms of compensation. Each parish is required to make financial reports to its Metropolis. Local parishes such as Annunciation Church are required to send monthly payments to the Archdiocese. As for the disposition of property, any sale, purchase, lease, or encumbrance on the real property of a parish church such as Annunciation Church in Memphis must be approved by the Metropolis.

Plaintiff also cites evidence that in 2006, Defendant held its annual clergy-laity congress in Nashville, Tennessee. Approximately 1,381 people attended the four-day event, and at least 696 paid the Archdiocese a fee of $500 per person to attend. Exhibitors at the conference paid Defendant $1,500 each for booth space at the event. In all Defendant spent about $1 million dollars in Nashville to hold its annual congress there.

In his legal argument on the jurisdictional question, Plaintiff concedes that specific personal jurisdiction does not exist in this case. But Plaintiff maintains that this Court has general personal

jurisdiction over Defendant. Plaintiff argues that Defendant "totally controls" the activities of Annunciation Church in Memphis.[2] Although Plaintiff admits that Defendant does not own property in the forum, Defendant has the right to take title to parish church property such as the property owned by Annunciation Church. And while it is true that Defendant holds no assets or accounts in the forum, Defendant is entitled to monthly payments from parish churches in the forum. And while admitting that local parishes must pay the salaries and benefits of their parish priests, Plaintiff contends that Defendant defines the minimum criteria for these and other personnel matters. Defendant also maintains a website that is available to Tennessee residents and through which Defendant solicits donations from Tennessee residents. Plaintiff argues that other evidence shows that Defendant conducted commercial activities in Tennessee during its 2006 annual congress which was held in Nashville. According to Plaintiff, Defendant's activities in the forum state are akin to a parent corporation acting through its subsidiaries as a "single enterprise." Plaintiff argues, "the Archdiocese 'owns' 100% of its subsidiaries/churches by exerting unilateral, dictatorial control over nearly every aspect of its actions."[3] Based on this evidence, Plaintiff contends that Defendant has continuous and systematic contacts with the state of Tennessee. Plaintiff requests in the alternative that the Court transfer this case to the United States District Court for the Middle District of Tennessee or the Southern District of New York.

In its reply, Defendant argues that Plaintiff has "vastly overstated" Defendant's role in the affairs of the local parishes. Defendant characterizes the relationship between the Archdiocese and each parish as purely ecclesiastical. Defendant reiterates that it has none of the typical contacts that

---

[2] Pl.'s Resp. in Opp'n 17 (D.E. # 25).

[3] *Id.* at 22.

would support general personal jurisdiction in this Court. Rather, Plaintiff has cited only hypothetical ways in which the Archdiocese may come to exercise direct control over parish property and affairs. Specifically, Defendant may become directly involved in parish affairs only in cases of "heresy, schism, or defection from the Archdiocese." Importantly, Plaintiff has failed to show that Defendant has ever had to exercise such authority in any parish located in the forum state. Defendant also argues that ecclesiastical direction through religious regulations should not be parsed to find personal jurisdiction. The proof shows that Defendant's only local contact is through its website. However, Defendant contends that its website does not directly target Tennessee residents and cannot establish the type of contacts required for general personal jurisdiction. Likewise, the fact that Defendant held one annual congress in Tennessee is insufficient to establish general personal jurisdiction. Defendant asserts that the congress was a one-time event and that it did not make a profit from the event, showing that the congress was not a continuous and systematic contact with the forum. Defendant responds to Plaintiff's single enterprise theory by arguing that Plaintiff must show Defendant's complete control over Annunciation Church to such a degree that the local parish is "nothing more than an instrumentality, agency, conduit, or adjunct of the parent corporation."[4] Finally, Defendant asks that the Court dismiss the Complaint rather than transfer the case to the United States District Court for the Middle District of Tennessee or the Southern District of New York.

## STANDARD OF REVIEW

When a party challenges personal jurisdiction pursuant to Rule 12(b)(2), a plaintiff bears

---

[4] Def.'s Reply 13 (D.E. # 28).

the burden of establishing the existence of jurisdiction.[5] A plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction.[6] In considering a properly-supported Rule 12(b)(2) motion, the Court may proceed in three ways: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."[7] Here the Court granted the parties an opportunity to conduct limited discovery on the jurisdictional issue. The Court has also received the affidavit of Jerry Dimitriou, the Executive Director of Administration for the Greek Orthodox Archdiocese of America.[8] The jurisdictional facts of this case appear to be undisputed; however, the parties do disagree over their weight or significance. Where the jurisdictional facts are not really in dispute and the parties simply disagree over their significance, a district court does not err by deciding the jurisdictional issue early in the case and without holding an evidentiary hearing.[9] Therefore, the Court will decide the Motion on the pleadings, affidavits, and other evidence submitted by the parties and without the aid of an evidentiary hearing.

In the event the district court reaches the jurisdictional issue on the basis of affidavits and

---

[5] *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989).

[6] *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).

[7] *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).

[8] Def.'s Mot. to Dismiss, Dimitriou Decl. (D.E. # 15-2).

[9] *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 980 (6th Cir. 1992).

limited discovery alone, the burden on the plaintiff is "relatively slight."[10]  "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."[11]  The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not "consider facts proffered by the defendant that conflict with those offered by the plaintiff."[12]

## ANALYSIS

Personal jurisdiction over a nonresident defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[13]  In a diversity case, the plaintiff must satisfy two showings that personal jurisdiction exists as to a nonresident defendant: (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met.[14]  Therefore, the Court may only exercise personal jurisdiction over a nonresident defendant if jurisdiction meets the state's long-arm statute and constitutional due process requirements.[15]

---

[10] *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280 (6th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.").

[11] *Cohn,* 839 F.2d at 1169.

[12] *PT Pukuafu Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 920 (6th Cir. 2011).

[13] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

[14] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[15] *Id*.

First, the law of the forum state determines "whether personal jurisdiction exists, subject to constitutional limitations."[16] In this case, the Tennessee long-arm statute sets forth the circumstances where an action or claim for relief might arise from a nonresident defendant's conduct within the state. Such conduct is defined as "the transaction of any business within the state; any tortious act or omission within this state; the ownership or possession of any interest in property located within this state; or entering into a contract for services to be rendered or for materials to be furnished in this state."[17] Tennessee's long-arm statute is interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution.[18] Consequently, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical."[19]

The Court holds that its exercise of personal jurisdiction over Defendant would be inconsistent with the due process requirements of the Constitution. "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general."[20] The parties agree that specific personal jurisdiction does not exist in this case. Therefore, Plaintiff can meet his burden to survive the Motion to Dismiss only if Plaintiff can establish that this Court has general personal jurisdiction over Defendant. A court may have general jurisdiction over an out-of-state

---

[16] *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000).

[17] *Id.* (citing Tenn. Code Ann. § 20-2-214(a)(1), (2), (3), & (5)).

[18] *Id.* (citing *Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir. 1993)).

[19] *Id.*

[20] *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007) (citing *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir. 1994)).

defendant when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[21]  In other words, general personal jurisdiction exists where a defendant's contacts with the forum state are so "pervasive" or "very substantial" that the Court can find jurisdiction even if the suit has nothing to do with those contacts.[22]

Viewing the evidence before the Court in the light most favorable to Plaintiff, the Court finds that general personal jurisdiction does not exist as to the Archdiocese.  Nothing in the record before the Court could be construed as Defendant's continuous and systematic contacts with the state of Tennessee.  Plaintiff has not shown that any of the typical forms of contact for establishing general personal jurisdiction are present in this case.  Defendant owns no property and holds no assets in this forum and maintains no offices or staff here and has no other contacts that might establish its "pervasive" activities in the state of Tennessee.  Instead Plaintiff has cited extensive evidence of ecclesiastical regulations promulgated by Defendant, which govern the affairs of Annunciation Church, the local parish congregation situated in the Western District of Tennessee.[23]  Plaintiff also

---

[21] *Intera Corp.*, 428 F.3d at 615 (citing *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir. 2002)).

[22] *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012) (citing 4 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed.2002) (other citations omitted).

[23] Defendant argues that the Court should "avoid the dangerous game of parsing ecclesiastical regulations to determine the civil rights of litigants." Def.'s Reply 5.  Were this action concerned with a matter of intrachurch polity, Defendant's argument would be well-taken. *Gen. Council on Fin. & Adminis. of United Methodist Church v. Super. Ct. of Calif., San Diego Cnty.*, 439 U.S. 1355, 1372 (1978).  However, this case presents a purely secular dispute between a third party and a religious organization.  *Id.* at 1373.  Therefore, the Court finds no danger in considering the rules and regulations of the Archdiocese to determine what degree of control Defendant exerts in this forum.

cites evidence that Annunciation Church remits funds to Defendant on a monthly basis and is required to submit an annual financial report to the Archdiocese. The Court holds that these contacts do not establish general personal jurisdiction over the Archdiocese. "A parent corporation's general involvement with the subsidiary corporation's performance, finance and budget decisions, and general policies and procedures does not provide a basis for attributing one corporation's contacts with the forum to the other for the purposes of personal jurisdiction."[24] Therefore, even accepting these facts as true for purposes of Defendant's Motion to Dismiss, the Court concludes that Plaintiff has not shown that Defendant is "doing business" in this District or otherwise "at home" in the state of Tennessee. As such, this Court lacks general personal jurisdiction over Defendant.

Plaintiff's primary argument is the contention that Defendant and Annunciation Church are a "single enterprise" or "unitary business" in which Defendant "exert[s] unilateral, dictatorial control over nearly every aspect of" the local church's affairs.[25] Plaintiff refers to the "single enterprise" theory of personal jurisdiction, a concept the Sixth Circuit and the Tennessee Supreme Court have never explicitly adopted.[26] The Sixth Circuit has applied the alter-ego theory, a related concept of personal jurisdiction also recognized by the Tennessee Supreme Court, to decide whether general personal jurisdiction existed over a parent corporation based on the presence and activities of a

---

[24] *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 651–52 (Tenn. 2009) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

[25] Pl.'s Resp. in Opp'n 17.

[26] The Tennessee Supreme Court has referred to the "enterprise test" as one of four possible tests for determining "whether the parent corporation so dominated the subsidiary corporation as to negate its separate personality" as a basis for personal jurisdiction. *Gordon*, 300 S.W.3d at 653 n.14 (citation, internal quotation marks and parentheses omitted).

subsidiary in the forum.[27] In *Toyota Motor Corp.*, the Sixth Circuit applied Ohio law and held that the presence of a subsidiary in a forum may confer jurisdiction on a parent company, "if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same."[28] Assuming for purposes of this analysis that the Archdiocese is properly considered a "parent" corporation and the local parish churches its "subsidiaries," the Court will consider Plaintiff's "alter ego" theory by applying the forum state's law of corporations.

Under Tennessee law, there is a presumption that parent and subsidiary corporations are separate and distinct legal entities.[29] For this reason, "jurisdiction over a subsidiary corporation does not automatically establish jurisdiction over a parent corporation."[30] The Tennessee Supreme Court in *Gordon* held that the actions of one corporation may serve as a basis for personal jurisdiction over a related corporate entity "(1) when one corporation is acting as an agent for the other or (2) when the two corporations are essentially alter egos of each other."[31] In either event, both relationships must be characterized "by the parent corporation's control of the subsidiary corporation's internal affairs or daily operations."[32] Here, despite a single reference to Annunciation Church acting as the

---

[27] *Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362–63 (6th Cir. 2008) (collecting cases). *See also Gordon*, 300 S.W.3d at 651–52 (analyzing whether personal jurisdiction existed over subsidiary because of presence and activities of parent corporation in Tennessee).

[28] *Toyota Motor Corp.*, 545 F.3d at 362–63; *Indah*, 661 F.3d at 921 (citation omitted).

[29] *Gordon*, 300 S.W.3d at 651.

[30] *Id.* (citing *Int'l Shoe*, 326 U.S. at 332) (other citation omitted).

[31] *Id.* at 652 (citations omitted).

[32] *Id.* at 653.

agent for the Archdiocese,[33] Plaintiff essentially argues that the two entities are alter egos. Plaintiff describes the Archdiocese and Annunciation Church as a "single enterprise" or "unitary business," theories which as previously mentioned are analogous to the alter ego theory. Accordingly, Plaintiff may overcome the presumption of corporate separateness and prove that one entity is merely the alter ego of another entity by showing (1) that the subsidiary corporation is a sham or dummy,[34] (2) that the two corporations are, in fact, identical and indistinguishable,[35] or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation.[36]

Applying these principles of Tennessee law to the facts presented in this case, the Court holds that Plaintiff has not carried his burden to show that Annunciation Church or any of the parish churches located in Tennessee is simply the alter ego of the Archdiocese. Plaintiff has not proven that Annunciation Church is a sham or dummy corporation or that the local church and the Archdiocese are identical and indistinguishable. Rather, Plaintiff relies heavily on the fact that the Archdiocese promulgates regulations and other rules for all local parishes and has the authority to intervene in the affairs of the local churches. Plaintiff then has attempted to show that Annunciation Church is merely an instrumentality, agent, conduit, or adjunct of the Archdiocese. The Court holds that Defendant's ecclesiastical regulations do not establish that Defendant has complete control over

---

[33] Pl.'s Resp. in Opp'n 12 ("The Annunciation Church, by publishing its by-laws pursuant to the Regulations of the Archdiocese, appears to be acting as the agent of the Archdiocese.").

[34] *Gordon*, 300 S.W.3d at 653 (citing *Elec. Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.,* 691 S.W.2d 522, 526 (Tenn.1985)).

[35] *Id.* (citing *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d 846, 866 (Tenn. Ct. App. 2000)).

[36] *Id.* (citing *Stigall v. Wickes Mach.,* 801 S.W.2d 507, 511 (Tenn. 1990)).

the day-to-day affairs or operations of Annunciation Church or any other of its "subsidiaries." There is no evidence that Defendant approves every decision much less directs every action of the local parish church from its headquarters in New York. At most, the regulations prove that Annunciation Church and other parish churches are member institutions within a larger religious body. As such, Annunciation Church and other parish churches have agreed to be bound by the standards and discipline of the Archdiocese. This association includes providing regular monetary support to Defendant.[37] The Court finds this evidence entirely consistent with the ecclesiastical structure of many religious institutions, which by their very nature have elements of a "top-down" organization, insist on uniformity among member institutions, and provide funds for the support of the governing body. Viewing the evidence in the light most favorable to Plaintiff, Defendant does not exert such control over the daily internal affairs of parish churches that the entities can be said to be alter egos. Therefore, the Court concludes that Plaintiff has not overcome the presumption of corporate separateness, and so the Court does not have general personal jurisdiction over Defendant.

It is true that under the ecclesiastical regulations, the property and administration of Annunciation Church could theoretically end up under the control of Defendant but only after certain conditions come into existence. This evidence only underscores the undisputed fact that Defendant does not hold any property or assets in Tennessee and has at best a conditional custodial interest in the property of Annunciation Church. Defendant's conditional interest would become actual

---

[37] The fact that the Archdiocese maintains a website which is accessible in Tennessee and through which the Archdiocese accepts donations from Tennessee residents is insufficient to support general personal jurisdiction. *Bird*, 289 F.3d at 874 (holding that "maintain[ing] a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction").

ownership and vest at some future point in time only if Annunciation Church is found to be in heresy, schism, or defection from the Archdiocese. There is no evidence, however, that Defendant's future interest is anything other than hypothetical. For example, Plaintiff has not shown that Annunciation Church has become involved in heresy, schism, or defection from the Archdiocese, conditions which could result in the local parish property ending up in the hands of Defendant at any time. Because the Sixth Circuit has held that the mere presence of property (that is, an actual, vested property interest) does not support general personal jurisdiction,[38] the Court holds that a conditional future interest is even less probative of continuous and systematic contacts.

Plaintiff has also adduced evidence that Defendant held an annual congress in Nashville more than five years ago. The Court holds that this single contact is not so pervasive that it "would approximate physical presence within the state, and certainly not the kind[] of contact[] that [Defendant] could reasonably anticipate engendering litigation unrelated to his presence in [the forum state]."[39] Otherwise, there would exist a basis for general personal jurisdiction against any party that held a one-time convention in a particular forum, and any district with a significant convention business such Las Vegas, Nevada, or New Orleans, Louisiana, could obtain general personal jurisdiction in any number of instances over unsuspecting parties.[40] Such a result would not comport with "fair play and substantial justice."[41]

---

[38] *Conn*, 667 F.3d at 719.

[39] *Id.* at 720.

[40] *Accord id.* at 719 ("We would not hold that a person's annual travel to Ohio for a week-long trade-show is enough to subject her to the general jurisdiction of the state . . . .").

[41] *Int'l Shoe,* 326 U.S. at 320.

Even if the Court found that Defendant had such continuous and systematic contacts with the state of Tennessee, the Court holds that its exercise of general personal jurisdiction over Defendant would not be reasonable in this case. The United States Supreme Court has held that personal jurisdiction over party might be unreasonable in consideration of the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.[42] The burden on both parties to litigate in Memphis, Tennessee, would be heavy in this case. Plaintiff is a resident of Athens, Greece, and Defendant has its headquarters in New York, New York. Other than the presence of Annunciation Church, there is no evidence that witnesses or evidence related to the merits of the suit are situated in this District. Moreover, there is no evidence that Tennessee has any interest in the outcome of the parties' contractual dispute. The agreement at issue was not negotiated in Tennessee, agreed to in Tennessee, or intended to be performed in Tennessee.[43] There is no indication that Tennessee is the only forum where Plaintiff can bring this claim. In fact, Plaintiff has requested as alternative relief that the Court transfer the case to the United States District Court for the Middle District of Tennessee or the Southern District of New York. The Court finds that the balance of these "fair play and substantial justice" factors weigh against finding jurisdiction in Tennessee. Therefore, Defendant's Motion to Dismiss is **GRANTED**.

Finally, Plaintiff has requested in the alternative that the Court transfer this case either to the

---

[42] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005).

[43] *Conn*, 667 F.3d at 721.

Middle District of Tennessee or the Southern District of New York. Pursuant to 28 U.S.C. § 1631, a district court "shall, if it is in the interest of justice, transfer" an action to any court where it could have been brought at the time it was filed, if the district court finds it lacks jurisdiction.[44] Other than a cursory request appended to the last page of Plaintiff's response brief, Plaintiff has not shown why transfer is in the interest of justice in this case. While Plaintiff presumably could have filed suit in the Southern District of New York, Plaintiff has not shown why this action could have been initiated in the Middle District of Tennessee. Perhaps most importantly, Plaintiff admits that there is no specific personal jurisdiction over Defendant in this forum. And general personal jurisdiction is so lacking in this case that the Court finds Plaintiff should have known that this Court did not have jurisdiction over Defendant.[45] Therefore, Plaintiff's request for transfer is denied.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 24, 2012.

---

[44] 28 U.S.C. § 1631.

[45] *Stanifer v. Brannan,* 564 F.3d 455, 460 (6th Cir. 2009).